J-S19002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.A.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.A.S. FATHER | : | |
| | : | No. 61 MDA 2023 |

Appeal from the Decree Entered December 16, 2022
In the Court of Common Pleas of York County Orphans' Court at No(s):
2022-0173a

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: AUGUST 2, 2023**

M.A.S. (Father) appeals from the decree, entered on December 16, 2022, that granted the petition filed by the York County Office of Children Youth and Families (CYF) to involuntarily terminate his parental rights to his son, D.A.R. (Child), born in July of 2021.  Following our review, we affirm the decree on appeal.[1]

CYF filed a petition for involuntary termination of parental rights pursuant to Sections 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.   The orphans' court's Pa.R.A.P. 1925(a) opinion indicates that it adopted its opinion that was stated on the record at the end of the termination of parental rights hearing, held on December 14, 2022, and December 16, 2022.  ***See*** Orphans' Court Opinion (OCO), 2/14/23, at 1; N.T.,

_____

[1] The parental rights of M.G.R. (Mother) were also terminated on the same date; however, Mother did not file an appeal.

12/16/22, at 159-200. The orphans' court also indicates that it took "judicial notice of the statements made in the amended motion for judicial notice that was filed December 12, 2022. That statement outlines the findings made in the underlying dependency action and comports with the orders that were entered as identified in that motion." OCO at 3 n.8 (citing N.T., 12/14/22, at 15). From the foregoing, we glean the following facts.

This matter began on July 16, 2021, shortly after Child was born. An order for emergency protective custody was issued and Child was placed in foster care. Although at first Father questioned paternity, he withdrew this claim and requested partial supervised visitation, which was granted and over time expanded, but with continued supervision. Father was employed, working the third shift, which caused Father to fall asleep and not be attentive to Child during visitation. Moreover, Father's home was found not to be appropriate. Father was ordered to complete a parenting capacity assessment, continue participation in individual therapy, cooperate with Catholic Charities, and continue to comply with supervised visitation. Child was doing well in the foster home.

Following a permanency review in December of 2021, Father was found to be moderately compliant with the permanency plan. He continued to work third shift and was scheduled for the parenting capacity assessment in January of 2022. His goals were outlined as follows:

> i. Father's therapeutic goals to be addressed were (1) safe decision making, (2) responses to situation and

> > environment, and (3) assuring that Father's relationships are safe for himself and the minor child.
> >
> > ii. Father's advocacy goals were (1) housing, (2) employment, (3) finances and budgeting, (4) transportation, (5) parenting capacity, (6) assuring participation in the minor child's appointments, and (7) domestic violence and anger management.

Amended Motion for Judicial Notice (AMJN), 12/12/22, at 9. Although Father's progress was rated as moderate, "there continue[d] to be some concerns regarding the anger management services and the completion of the Parenting Capacity Assessment." *Id.* In response to recommendations suggested to Father, he attended individual counseling, but did not start couples counseling or anger management classes. Although Father did not attend Child's Early Intervention sessions, he did continue to visit with Child, which went well.

In a status review order issued by the trial court on March 18, 2022, the orphans' court determined that Father was making moderate to significant progress with fully supervised visitation with Child, which was moved to Father's home. He continued to work full time and could financially support Child. He attended weekly counseling for anger management and domestic violence, which "was adjusted to accommodate Father's borderline intellectual functioning." *Id.* at 13.

In the permanency review order issued on June 1, 2022, the orphans' court found Father's compliance to be only moderate. He remained employed at Burger King. In his home, Father kept a large snake in the bedroom in which Child would reside if reunified with Father. A lot of people resided in

Father's home, including his significant other, who needed to complete a parenting capacity addendum, and Father was to continue visitation coaching, parenting education, and bi-weekly outpatient counseling. Father was discharged from anger management classes, had completed a parenting capacity assessment, and was diagnosed with unspecified trauma. It was determined that Father may be able to parent a child if he had support. It was recommended that Father's visits with Child transition to partial supervision, but there was a need to continue placement of Child outside the care and custody of Father.

The findings and conclusions provided in the status review order, dated September 12, 2022, indicated that concerns remained as to Father's residence and that police were frequently called there due to domestic disputes. Father reported he had changed jobs but provided no documentation. Partial visitation with Child continued at Father's home; however, when caseworkers made visits, it was noted that broken glass was found in the home which made the location unsafe for Child. It was also noted that Father allowed his significant other to take Child to the store even though she had a lengthy history with CYF. Concerns continued about Father's significant other and the necessity to have frequent contact with the police. Father was not in individual therapy as was recommended. As for Child, he continued to do well in the foster home and was bonded with his foster parents. Child continued with Early Intervention, but Father had not attended any of these appointments. It was also reported that Child experienced night

terrors after visits with Father. In light of these findings, the court determined that "the current placement goal was not appropriate and/or feasible in that neither parent ha[d] made significant progress toward[] reunification." *Id.* at 20. Therefore, the court changed the primary goal to adoption, but reunification with Father was a concurrent goal.

The November 16, 2022 permanency review order provided that Father's compliance with the permanency order was moderate. Father reported that he continued employment but provided no pay stubs or verification to CYF. He also indicated that he would be moving from the house he shared with his significant other, but continued to remain in their home despite the fact his significant other seemed to perpetuate the conflicts between her and Father, and he took no steps to reduce the conflict. His significant other reported that he hit her during one of Child's visits. Father admitted to arguments but denied domestic violence. Therefore, visits with Child returned to fully supervised. Father also missed a visit with Child and declined a Zoom visit. He also did not provide the necessary special brand of diapers and milk that Child required due to acid reflux, eczema and rashes from milk protein. Rather, the foster mother provided these necessities. Father was attentive to Child during visits but did not feed Child or parent him. The court concluded that "Father made minimal progress toward alleviating the circumstances which necessitated the original placement." *Id.* at 23.

Additionally, in the November order, the court discussed how well Child was doing in the foster home. He was receiving weekly occupational therapy

and was working on feeding and food aversions. Although given notice by the foster mother, Father did not attend medical appointments or Early Intervention sessions. The court determined Child's placement outside Father's custody continued to be needed. Thus, the court found that it was in Child's best interest to be free for adoption and that he could remain with the only parents providing for his care.

As noted above, the hearing on the termination petition was held on December 14th and 16th of 2022. CYF presented the testimony of a caseworker involved in the matter and the foster mother. Father testified on his own behalf. The court then issued its decree terminating Father's parental rights to Child pursuant to Section 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act. Thereafter, Father filed a timely appeal to this Court, setting out the following issues in his brief:

I. Whether the orphans' court erred in terminating the parental rights of Father pursuant to [S]ection 2511(a)(1), (2), (5) and (8) of the Adoption Act?

   a. The evidence did not support by clear and convincing evidence that Father had evidenced a settled purpose of relinquishing parental claim to [C]hild or has refused or failed to perform parental duties.

   b. The evidence did not support by clear and convincing evidence that [C]hild was without parental care or control or that the conditions which led to the initial placement would not or could not be remedied by Father.

   c. There was not clear and convincing evidence that [F]ather could not or would not remedy the conditions which led to the initial removal.

> d. There was not clear and convincing evidence that the conditions which led to the removal or placement of [C]hild continued to exist and termination of parental rights would best serve the needs and welfare of [C]hild.

> II. Whether the orphans' court erred in concluding that termination of parental rights would best serve the needs and welfare of … Child pursuant to [S]ection 2511(b) of the Adoption Act?

> III. Whether the orphans' court erred in concluding Father failed to meet many of his goals as Father was doing well until [] his visits were changed back to supervised visits due to "concerns" about domestic violence, which were never substantiated?

Father's brief at 6-7.[2]

Appellate review of termination of parental rights cases implicate[s] the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re I.J.*, 972 A.2d 5, 8 (Pa. Super. 2009) (quoting *In re S.D.T., Jr.*, 934 A.2d 703 (Pa. Super. 2007), *appeal denied*, … 950 A.2d 270 ([Pa.] 2008)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

---

[2] Father listed a fourth issue, but in the Argument Section of his brief he withdraws that "issue from this Court's consideration." *See* Father's brief at 36. Therefore, we do not include it in the list of issues raised.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa. Super. 2004) (*en banc*), *appeal denied*, … 863 A.2d 1141 ([Pa.] 2004) (internal citations omitted).

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa. Super. 2002) (internal citations and quotation marks omitted).

*In re Z.P.*, 994 A.2d 1108, 1115-16 (Pa. Super. 2010).

We are guided further by the following: Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

- 8 -

However, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d at 384.

We therefore consider the orphans' court's termination of Father's parental rights pursuant to Section 2511(a)(8) and (b), which provide:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> > (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . .
>
> **(b) Other considerations.**-The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

This Court has stated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the

- 9 -

removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003); *see also* 23 Pa.C.S. § 2511(a)(8).

"Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003). Once the twelve-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable, good faith efforts of CYF supplied over a realistic period. *Id.* The "relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d at 11. This Court has acknowledged:

> [T]he application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.

*In re J.F.M.*, 71 A.3d 989, 997 (Pa. Super. 2013) (quoting *I.J.*, 972 A.2d at 11-12).

With respect to the "needs and welfare" analysis pertinent to section 2511(a)(8) and (b), we have observed:

- 10 -

[I]nitially, the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child. However, Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on the "developmental, physical and emotional needs and welfare of the child." Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent. Moreover, only if a court determines that the parent's conduct warrants termination of his or her parental rights, pursuant to Section 2511(a), does a court "engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." Accordingly, while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1008-09 (Pa. Super. 2008) (*en banc*) (citations omitted). "Section 2511(a)(8) does not require an evaluation of the remedial efforts of either the parent or [the Agency]." *In re B.C.*, 36 A.3d 601, 611 (Pa. Super. 2012) (citing *C.L.G.*, 956 A.2d at 1007).

With respect to Section 2511(b), this Court has explained the requisite analysis as follows:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of

- 11 -

the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010).

The thrust of Father's argument relating to subsection (a)(8) is that CYF did not carry its burden. Although Father concedes that the 12-month period required in subsection (a)(8) has elapsed, he "does not concede that the conditions which led to the removal of [C]hild continue to exist or could not be remedied promptly." Father's brief at 28. He asserts that the initial concerns were with Mother and that he made progress during much of the case and his visits with Child became partially supervised visits in his home. Father also points out that he maintained employment and stable housing. Additionally, he asserts that he "complied with the Agency's request for a Parenting Capacity Assessment[] and engaged in counseling and anger management counseling." *Id.* at 29. He further relies on the Parenting Capacity Assessment that showed he could raise Child with support. He also argues that the record did not support the court's conclusions that there were domestic violence concerns. With regard to subsection (b), Father asserts that the bond between him and Child is limited because of the amount of time he spends with Child. He also contends that he is ready to have Child in his home and that he "has extended family in the area that would be supportive and would love to see [C]hild." *Id.* at 32.

The orphans' court responded to Father's arguments set forth in his first and second issues, specifically, those relating to subsections (a)(8) and (b) as follows:

The [c]ourt has noted that [Father] had some instances of progress in remedying the conditions that initially caused placement. However, these instances were only brief windows of time in which [Father] showed minimal motivation to fully remedy those conditions to achieve reunification. Brief instances of improvement do not negate that the second element of this factor is satisfied. Though an unpublished opinion, we find compelling a Superior Court decision that affirmed a trial court's finding regarding similar conduct by a parent when it terminated the parental rights of a mother under § 2511(a)(8), when the mother made inconsistent and sporadic progress towards remedying the conditions that led to the initial removal only to subsequently rescind on that progress each time. As the court so aptly stated:

It was proper for the trial court to conclude that Mother has exhibited a pattern of poor judgment and bad decision making, and that she failed to correct that pattern.

***In the Interest of J.M.K.***, 159 A.3d 44 (Pa. Super. … 2016) ([u]npublished).[3]

Similarly, although [Father] achieved some progress toward addressing the conditions that led to [C]hild's removal, the second element of this factor is still satisfied, as he shows a clear pattern of poor judgment and bad decision[-]making which resulted in conditions re-emerging and leaving [C]hild to languish in care. For example, [Father] would appropriately change [h]is work schedule, but changed it back. [Father] progressed to partially unsupervised custody, but then required full supervision. [Father] picked which treatment and programs he wanted to participate in, but refused to entertain most attempts to assist him.

Specifically, [Father] did not adequately or consistently address his housing or his employment issues, which were the issues that le[]d to the initial removal. He found suitable housing, but quickly returned to unsuitable housing. He switched to work a shift that would permit basic childcare, and then returned to working 3rd shift without developing any plan for supervision of [C]hild by a competent adult while he was at work. Over the course of sixteen (16) months, [Father] made arbitrary and poor

_____

[3] We remind the orphans' court that only unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019 may be cited for their persuasive value. ***See*** Pa.R.A.P. 126(b).

decisions on what resources he did and did not feel like utilizing. He made poor judgment about what constituted proper housing or working hours that would allow for basic childcare. At one point, he even declined the Agency's offer of bus passes to help with transportation to [C]hild's medical appointments. Although we need not consider the parent's ability or willingness to remedy these conditions under this subsection, [Father] showed through his inconsistencies that he had the potential to remedy the conditions when he felt inclined, but would do so … only for short periods of time.

Like the Superior Court's findings in **In the [I]nterest of J.M.K.**, the record reflects that [Father] had a pattern of poor judgment and bad decision[-]making that he failed to correct. The trial court submits that this is enough to satisfy § 2511(a)(8).

[Father's] statement also contends that the [orphans'] court erred in concluding that the third prong of the § 2511(a)(8) analysis was satisfied, and that termination of parental rights would not best serve the needs and welfare of [C]hild pursuant to § 2511(b) of the Adoption Act.

The [orphans'] court submits that it found termination would best serve the needs and welfare of [C]hild based on clear and convincing evidence presented by the [Agency]. In addition to the daily needs being met exclusively in the foster home, [C]hild has required specialized care for his multiple health issues.[13] The foster parents provided most, if not all, of the required supplies for these issues for nearly [C]hild's entire life. The foster parents also ensured that the [C]hild attended ongoing medical appointments and followed treatment plans. [Father] was not able to consistently provide for [C]hild's basic and special needs, even with coaching and notice, at any time leading to the filing of the petition. [Father] did not ask about [C]hild's progress in physical therapy or for any updates on [C]hild. [Father's] inability to provide consistent care would be particularly harmful to a child with ongoing medical issues who requires a parent who can perform tasks such as timely administer[ing] [C]hild's medication and ensur[ing] [C]hild attends his scheduled appointments.

[13] [C]hild's health concerns include reoccurring eczema diaper rashes, muscle issues in his neck, eye[]tracking issues, food aversion, lactose intolerance, and other gastrointestinal issues that require special diapers and formula.

Furthermore, the Superior Court has held that common sense dictates that when courts consider termination, they must additionally consider whether the child is in a pre-adoptive home, and whether the child has a bond with their foster parents. ***In re T.S.M.***, 71 A.3d 251, 267-69 (Pa. Super. 2013). The record shows that [C]hild has bonded with his foster parents, and that his foster parents provide for his emotional needs as well. Again, [C]hild's foster parents were his caretakers for nearly his entire life. Foster mother testified that [C]hild refers to his foster parents as "mom" and "dad", respectively. There was no indication the Child had bonded with [Father], and it was reported [C]hild experienced night terrors after visiting with him. [Father] acknowledged in his own testimony that [C]hild does not refer to him as "dada". [Father] also acknowledge[d] [C]hild has little to no interest in interacting with him during visits, and that there is no bond between them. In light of these facts and [Father's] own admissions, [C]hild would suffer no long-term harm from severing his contact with [Father], because there is little to no bond to sever. Therefore, the trial court submits that termination of parental rights best serves the needs and welfare of [C]hild.

OCO at 5-10 (footnotes citing pages in the N.T. omitted).

Based upon the facts found by the orphans' court, which our review reveals are supported by the evidence of record, we discern no abuse of discretion by the court in its conclusion that the asserted grounds for seeking termination of parental rights are valid and, additionally, that terminating Father's parental rights would best serve the developmental, physical and emotional needs and welfare of Child.[4]

The entire thrust of Father's third issue is essentially a restatement of the facts that were found in his favor and his contention that some of the court's findings were not substantiated by the evidence. Again, we are

---

[4] We further observe that the attorney representing Child joined CYF's brief that was in support of the orphans' court's decision to terminate Father's parental rights.

- 15 -

compelled to disagree with Father's argument. Rather, the court's extensive review and discussion is supported by the record. Moreover, as noted earlier, the orphans' court is the sole finder of fact and the determiner of credibility of the witnesses. ***See In re Z.P.***, 994 A.2d at 1116. We, therefore, conclude that the court did not abuse its discretion or commit reversible error in terminating Father's parental rights. Accordingly, we affirm the decree from which Father appealed.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/2/2023